EUGENIA W. STEVENSON ET AL. *v.* CHARLES A. C. RENARDET ET AL.

1. HUSBAND AND WIFE. *Antenuptial contract. Rescision.*

An antenuptial contract between husband and wife as to her property is rescindable at their joint pleasure, and is rescinded *pro tanto* by their joint conveyance of part of the property.

2. SAME. *Construction.*

An antenuptial contract between husband and wife, reciting that it was desired to secure the wife the full control of her property for life, and the right to dispose of it according to her pleasure, so that it should descend to such children as she might have at her death, and that therefore it was agreed that she should hold her property as if she were to remain single, and that at her death, all the property of which she should be seized and possessed should descend to the children she should then have, according to her will and pleasure, does not preclude the wife from incumbering or selling her property, nor prevent any remaining at her death from being subject to her debts.

FROM the chancery court of Alcorn county.

HON. HENRY L. MULDROW, Chancellor.

Mrs. Stevenson and others, appellants, were complainants and Renardet and others, appellees, were defendants, in the court below.

The opinion states the controlling facts of the case.

*T. D. Young,* for appellants.

A vested right is where there is an immediate fixed right of present enjoyment, or a present fixed right of future enjoyment. *Marshall* v. *King,* 24 Miss., 85.

An agreement to set apart a particular fund for the payment of a particular creditor, raises a trust and creates a lien upon the fund in favor of such creditor. *Ewing* v. *McArthur,* 1 Hun., 541; *Wharton* v. *Bavendar,* 14 Lea., 178; *Norman* v. *Burnett,* 25 Miss., 183; *Templeton* v. *Tompkins,* 45 Miss., 424.

No form of words is necessary to create a trust, but looking to the acts and intentions of the parties, if it appear that it was their intention to create a trust, the court will declare and enforce it. *Norman* v. *Burnett, supra,* 183; *Alexander* v. *Berry,* 54 Miss., 422; *Wade* v. *Am. Col. Society,* 2 Smed. & M., 663; *Lucas* v. *Lockhart,* 10 Smed. & M., 466; *Commissioners of Sinking Fund* v. *Walker,* 6 Miss., 143; Hill on Trustees, p. 96; 34 Miss., 553.

It is not the legal conveyance or transfer of the property but the declaration of the trust that operates in the creation of the trust; and it is by no means necessary that this declaration should be made by a formal deed or will. Hill on Trustees, 98, 99.

Where by a marriage contract in which the property of the wife is settled upon her, with the provision that in the event she had children she should have no power of disposition, but if she had no children her power of disposition should be that of a *feme sole* over her own property; but which declared her power of disposition to be by will, or in the event of her dying without a will, the property should descend to the person or persons she may have said it should go to, and vest in as valid a manner as if she had made a will. It was never held that her power of disposition was only testamentary in its character, and that a deed of gift in *presenti* by which the wife conveyed the property to another, was unauthorized

and void. *Hoyle* v. *Smith,* 1 Head., 91. See, also, *Bank* v. *Patton,* 5 Smed. & M., 241.

After a marriage contract property cannot be conveyed to defeat its purposes. *Lippman* v. *Boals,* 16 Lea, 283; *Exum* v. *Canty,* 34 Miss., 569; *Macklin* v. *Haygood,* 90 Tenn., 195; 6 Yerger, 340.

Where a party purchases a legal title with a knowledge of an outstanding equitable title, he is but a trustee of the owner of the equitable title. *Thompson* v. *Wheatley,* 6 Smed. & M., 499; *Isom* v. *Bank,* 52 Miss., 902; *Calhoun* v. *Burnett,* 40 Miss., 599; *Selph* v. *Howland,* 23 Miss., 264.

As to the power of the wife to alienate the estate after joining in an antenuptial contract declaring a trust in favor of the children, see the following: *Montgomery* v. *Agricultural Bank,* 10 Smed. & M., 566; *Jordan* v. *Thomas,* 34 Miss., 72, 7 Smed. & M., 663; 10 Smed. & M., 466; *Gorin* v. *Gordon,* 38 Miss., 205, 36 Miss., 358, 32 Miss., 107; 4 Smed. & M., 176; *Edwards* v. *Gibbs,* 39 Miss., 166; *Gully* v. *Hull,* 31 Miss., 20; *Mitchell* v. *Mitchell,* 35 Miss., 108.

In construing a marriage settlement courts will not hold a naked power of a limited and special character to the settler, to be a power coupled with an interest, or a power of revocaton, so as to enable him to defeat a provision for the children, if any other construction can be adopted consistent with the terms of the instrument. *Gorin* v. *Gordon,* 38 Miss., 205.


*Boone & Curlee, Candler & Candler* and *W. J. Lamb,* for appellees.

The contract under review, which was made in 1875, evidently intended and had for its sole purpose the relieving of Mrs. Margaret Renardet of the disability of coverture as to all her property then owned or thereafter to be acquired and at her death to have said property owned by her descend to the children and not to the husband and children, and not to descend with the estate of curtesy as fixed thereto as

provided for by the then law as to the land. The contract is so clear and free of ambiguity that we feel embarrassed in attempting to make an argument upon the construction of the contract to an intelligent court. In its first preamble we find the purpose declared to be "to secure to Margaret Renardet such settlement of property as they have agreed upon." In this preamble no reference whatever, in the most remote way, is made to any person except Margaret Renardet. That preamble sets forth that the desire of the parties to secure to Margaret Renardet a settlement of her property. In the second preamble it is stated that whereas, Margaret Renardet had a considerable amount of property and said C. A. C. Renardet had no property, and it being desired by them to secure to said Margaret Renardet full ownership, management and control of all the property which she then owned, and which thereafter might be accumulated, purchased or in anywise acquired by her, or by her and the said C. A. C. Renardet jointly during the lifetime of the said Margaret Renardet, and to secure to her the right to make disposition of the same according to her will and pleasure, so that the property shall descend to her said children, and such other children as she should then have at her death. In this preamble the rights of nobody are sought to be protected or cared for except the rights of Margaret Renardet. It is therefore expressly provided that the purpose of the agreement is to secure to said Margaret Renardet in her own right the full enjoyment, control and management of all property therein described, and to secure to her the right to make disposition of the same according to her will and pleasure, independent of the will and the pleasure of the husband C. A. C. Renardet, and freed from the disability of coverture and have said property freed from the estate of *curtesy* given to the husband by law, so that said property shall descend to her said child or children, and not descend to the husband, C. A. C. Renardet, either as heir or as husband. The purpose of this preamble cannot be more plainly stated, and nowhere in it is

there any effort at setting forth any purpose to create by the contract an estate of any kind whatever in the children of Margaret Renardet, but on the contrary, that idea of creating a present trust in the children is expressly negatived by the provision that the property shall descend to the children at the death of the mother; descend as the law directs. The word "descend" used in the contract not being qualified in any sense, but stands as a common, legal phrase, well understood by all courts.

Now, after stating the purpose of the agreement in the preamble, the first clause in the agreement is as follows: "Now, therefore, it is agreed that the said Margaret Renardet, after said contemplated marriage, is to hold all the property which she now owns in her own right and absolutely, as if she were to remain single and unmarried." No stronger declaration could have been made by parties to this contract, evidencing a purpose upon their part that the property owned by Margaret at the date of the contract and to be thereafter acquired by her should remain her property after marriage exactly as it was owned and possessed by her prior to marriage. It was an express declaration against a trust in favor of children, and an express declaration against any limitation whatever upon her ownership of property and power and control over it, but provides expressly that she is to hold all the property in her own right, not in trust, but in her own right as absolutely as if she were to remain single. Now, prior to this marriage this woman did not hold her property in trust for her children, her property was her own, subject to any disposition whatever she saw proper to make of the same, and the fact of her having a child did not in any degree limit her power to dispose of her property in her own way and according to her own pleasure, and this first clause of the agreement, or the contract, provides that it shall remain her property just as though she were to remain single and unmarried, and from that clause it is absolutely impossible to conclude that its pur-

pose was to create a trust estate and thereby pass the property beyond her power to finally dispose of the same.

The next clause in the contract provides that said C. A. C. Renardet, the husband, conveyed and relinquished all right, title, and interest which he might acquire by said contemplated marriage, thereby strengthening the first clause in the contract, and thereby declaring the property to the wife freed from any claims given to the husband by law, and being simply a further and clearer expression of the purpose on the part of the contracting parties that the wife should absolutely hold and own said property. No more appropriate language could have been used by parties to set forth an intention and purpose to create simply an absolute estate in the wife, and that her property should remain in her the same as if she were a single woman, these two clauses of the contract pertaining to the property then owned by Margaret the wife.

The next clause conferred the said right in respect to the property to be afterwards acquired, and it is provided that this property to be afterwards acquired should be held as the property she then owned, viz.: to be held by her to the same extent as if she were to remain unmarried. No intimation whatever that there shall be a trust left for the benefit of anybody to the property afterwards acquired, but that the afterwards acquired property should be just as the property then owned in the wife the same as if she were unmarried, thereby again expressly declaring the nature of the estate to be held and owned by her without any intimation whatever of a present trust in the children, and further carrying out the purpose and demonstrating the purpose to be simply to deprive the husband of the estate in curtesy, and as to his common law rights to his wife's property, the same provision is repeated as to the afterwards acquired property, that was, provided as to the property then owned, namely, that the said husband relinquished all right, title and interest to the afterwards acquired property which he would otherwise acquire by reason of said marriage. Now, this contract up

to this point is clear, unequivocal and absolute, with not a word or an intimation of any effort to create an estate in trust in Margaret Renardet for the benefit of her children, and fixes the character of her ownership to the property during her life, and confers upon her full enjoyment, control and management of all the property then owned at the date of the contract and to be afterwards acquired, freed from any claims that the husband might have under the law by reason of his marriage.

Now, the first time that the interests of the children is referred to is in the next clause of the contract, which provides as follows: "And it is further agreed that at the death of said Margaret all the property of which she shall then be seized and possessed shall descend to her daughter, Eugenie, and such other children as she may then have, according to the will and pleasure of the said Margaret." Now, what is the effect of this clause in the contract? It is clearly expressed in this clause that the purposes we have ascribed to the preceding clauses in the contract, are as we have given them. The previous clauses in the contract provided for the character of ownership of property up to the death of Margaret, and this last clause attempts to settle the rights of parties at the death of Margaret Renardet, and it provides that at her death "that the property of which she shall then be seized and possessed shall descend to her children," thereby clearly showing that our contention as to the purpose of the contract is correct, showing that she had a right to sell property during life, to dispose of property during life, and at her death only such property as she then stood seized and possessed of should descend to the children. So far as the property owned by her as shown by this bill is concerned, Mrs. Renardet simply owned the equity of redemption thereto, it having been previous to her death, as shown by the bill mortgaged to secure a debt. Her right to the property was a right to redeem from the mortgaged debt, and the only property, so far as property described in this bill is concerned, which descended to children under this

marriage contract was the equity of redemption. The property was not redeemed, the mortgage was foreclosed and the property had changed ownership, as shown by the bill, until it has reached the present owners.

CALHOON, J., delivered the opinion of the court.

C. A. C. Renardet and Margaret Renardet were married prior to 1871, and the only issue of that marriage is Eugenia, now the appellant, Mrs. Stevenson. They were divorced November 18, 1871, and remarried May 24, 1875, and the other two appellants, Joseph and Charles Renardet, were the only children of the second marriage. On the day of the second marriage they joined in a prenuptial contract, duly recorded, in which it is recited in the outset, under a "whereas," that the desire was by it "to secure to Margaret Renardet such settlement of property as they have agreed upon." It proceeds to show under a "whereas" that Margaret had considerable property, and that C. A. C. Renardet had none, and then sets forth (italics ours) that: "It being desired by them to *secure* to said Margaret the *full control* and management of all property which she *now owns* and which may *hereafter* be accumulated, purchased or in any way acquired by her and the said C. A. C. Renardet jointly *during the lifetime of said Margaret,* and to *secure to her* the right to *make disposition of the same according to her will and pleasure,* so that said property *shall descend* to her said child (Eugenia) or to said child *and* to such *other children* as she shall then *have at her death, now therefore* it is agreed that the said Margaret Renardet, after said contemplated marriage, is to hold all of the property which she *now owns in her own right as absolutely as if she were to remain single and unmarried,* and the said C. A. C. Renardet hereby conveys and relinquishes all right, title or interest in the same which he might otherwise acquire by said contemplated marriage. And it is further agreed and intended that the said Margaret *shall own and control and be secured*

in full *right, title, and interest in all the property which shall be accumulated* or in any *way acquired by her or by her and the said C. A. C. Renardet,* by their joint efforts and industry after said contemplated marriage is consummated to the *same extent* as if she were to remain unmarried, the said C. A. C. Renardet hereby relinquishing all right, title or interest in the same which he might otherwise acquire by said contemplated marriage; and it is further agreed that, at the time of the *death of the said Margaret,* all the property of which she shall *then be seized and possessed* shall *descend* to her daughter, Eugenia, or to her said daughter, Eugenia, and such other children as she may then have, *according to the will and pleasure* of the said Margaret." Margaret died in October, 1891. The bill in this case is filed by her three children against appellees, who claim title under her; and the record legal title to all the property was in her name when she died, except that as to nearly all of it she and her husband had put the legal title in a trustee in a deed of trust to secure a loan she had negotiated, and under conveyances under this trust deed nearly all the appellees claim. The only ground on which the claimants rest is that the antenuptial contract was a trust for them, and was unaffected by any conveyance made by C. A. C. Renardet and Margaret, his wife, after tenancy by the curtesy was abolished, and unaffected by any sale by a commissioner in chancery to pay Margaret's debts after her death. The case is before us on an appeal from a decree sustaining a demurrer to their bill to remove clouds from the alleged title.

As to such of the appellees as claim title under the trust deed executed by Mr. and Mrs. Renardet, there seems little difficulty. The antenuptial contract was like any other contract. It was between the parties to it, its consideration was between them, moving from each to the other, and, subject to their joint control, rescindable, in whole or in part, at their joint pleasure, and a conveyance of any part of the subject of it after the code of 1880, emancipating married women, in fee

simple by both, was a recission *pro tanto*. In this respect the case is widely different from a case where but one had conveyed, or where a third party had created a trust for the issue of the marriage, and was dead, or did not join in the conveyance. But this marriage contract should be interpreted now, because of the attitude of such of the appellees as do not claim pursuant to the joint trust deed. After the death of Mrs. Renardet her children may set up their rights, if any they may have under that contract, to any property not disposed of by the joint act of the two parties to it or by sale under decree for her debts. It is a rule universal that prenuptial contracts are to be construed liberally in favor of the wife in determining the estate designed to be settled on her, and the rights and powers intended to be conferred on her. 2 Beach, Modern Law of Contracts, sec. 1299. In this case there is certainly no declaration of any express trust, and, if any be implied, the implication must be clear to divest the wife of the absolute dominion she had as an unmarried woman over her own property. The preambles, "desires," prefaces, and "whereases" are of value in interpretation only where the actual gist of the agreement is of such doubtful purport as to admit of two constructions. This is not the case in this record. The actual agreement here, following the words, "now, therefore, it is agreed," unmistakably show that the wife was to hold and own the property absolutely as if she continued to be *feme sole,* and that what she died possessed of should go to such of her children, born and to be born, as she might indicate. This is the vital thing in the whole paper, this is what the woman's mind was on, and this is of no doubtful meaning. She had the right to incumber or sell, and the property was liable for her debts.

*Affirmed.*