MRS. PEARL COLE v. A. J. COLE.

[54 South. 953.]

1. PRE-NUPTIAL CONTRACTS. *Parol evidence. Identification.*
   While pre-nuptial contracts are to be construed liberally in favor of the wife, this should not be so extended as to overturn the statute of frauds.

2. PAROL EVIDENCE.
   The rule is that if the description contained in the writing points to specific property, parol evidence is admissible to identify it because that is certain which is capable of being made certain.

3. SAME. *Statute of frauds. Insufficient description.*
   Under Code 1906, section 4775, requiring a contract in consideration of marriage or to sell lands to be in writing, a contract in consideration of marriage to convey either one of four tracts of land worth twenty-five hundred dollars each and owned by the husband without other description is void for uncertainty in description.

APPEAL from the chancery court of Chickasaw county. HON. J. Q. ROBBINS, Chancellor.

This is a bill by Mrs. Pearl Cole against A. J. Cole asking the enforcement of a prenuptial agreement in regard to the conveyance of land. From a decree dismissing the bill plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Joe H. Ford,* for appellant.

The court sustained the demurrer on the ground that the land which was to be deeded to the appellant is not

sufficiently designated in the letters which constituted the ante-nuptial contract between them to base a decree of specific performance upon and that said contract is therefore void under the Statute of Frauds, Code 1906, section 4775.

1. It will be noted that the proposition of appellee to appellant is embraced in two letters. In the first letter he simply stated to her that if she would marry him, he would make her a deed to a piece of land which is worth twenty-five hundred dollars. In the second letter, he states to her that he owns only four tracts of land, but that either one of them is worth twenty-five hundred dollars, and if she will marry him, he will take her to look over these four tracts of land and she may take her choice of them, and he will make her a deed conveying to her the tract which she chooses. She both before and after the marriage made known to him her choice, which was the land sued for.

In my opinion this was sufficient. Suppose he had said to her: "I own only four tracts of land; now, if you will marry me, I will make you a deed to them all." Could it be said the contract would have been void and unenforcible because it did not describe the four tracts by metes and bounds? Then, again, to make the case still plainer, suppose he had made her a deed in consideration of marriage, reading to "all the land which I own." Would the court hold that deed to be void because the description was insufficient?

This court held in *Watson* v. *Duncan*, 84 Miss. 763, 37 South. 125, that description in an ante-nuptial contract as "You can will your property as you want to any persons," good, and the contract enforcible.

And it held in *Stevenson* v. *Renardet*, 83 Miss. 392, 35 South. 576, that the description of property in a contract as "all the property which she now owns" was good and enforcible. That was a marriage contract of the same character as the one involved in this case and that con-

tract was enforced after the wife's death and at the suit of her representatives.

Now, how much stronger and clearer is the description of the property involved in the case last above cited than the one at bar? Not one whit. Appellee simply said to appellant in effect: "I own four tracts of land. They are all the land I own now. Now if you will marry me, I will deed you your choice of these four tracts." She accepts his proposition, marries him and makes her choice known to him and he then deliberately refuses to do what he contracted to do. Of course in order to show what four tracts of land appellee owned it would be necessary to resort to parcel or extrinsic evidence just as it would be in the cases of *Watson* v. *Duncan* and *Stevenson* v. *Renardet, supra,* to show what land and property the contracting parties in these cases owned. But the fact that four tracts were all the land he owned at the time of writing the letters is shown by the letter—the letter itself. All you have to do is to make application of the language and the description in the letter to the four tracts of land appellee at the time actually owned, and that the tract set out in the bill is one of them and the choice of appellant. This is what was decided in *McGuire* v. *Stevenson,* 42 Miss. 724, one of the cases relied upon as authority by counsel for appellee before the chancellor. Extrinsic evidence would have construed and applied the description in the letters and showed the meaning of the words used therein. Certainly then, this is sufficient when such evidence should be introduced. 20 Cyc. 270; *McGuire* v. *Stevens,* 42 Miss. 724; *Doolittle* v. *Blakesley,* 4 Day 265 (Conn.), 4 Am. Dec. 218; *Doty* v. *Wilder,* 15 Ill. 407, 60 Am. Dec. 756; *Hurley* v. *Brown,* 98 Mass. 545, 96 Am. Dec. 671; *Meade* v. *Parker,* 115 Mass. 413, 15 Am. Rep. 110; *Becker* v. *Becker,* 241 Ill. 423, 89 N. E. 737, 26 L. R. A. (N. S.) 858; *Stevenson* v. *Renardet,* 83 Miss. 392, 35 South. 576.

To sustain the demurrer was to cut off from the introduction and benefit of extrinsic evidence to "construe and apply the terms of the writing." Extrinsic evidence would show beyond all question where these four tracts are which he said were all he at the time owned, as charged in the bill.

2. I think therefore that the description is sufficient for any kind of a contract. But it must be borne in mind that the contract attempted to be enforced here is an antenuptial or prenuptial contract, and is a suit between the original parties to the contract. Here the prospective husband makes a proposition in writing if the intended wife will marry him, he will make her a deed to one of his four tracts of land, he being the owner of only four, she to have her choice of them. She believes what he says, makes known to him her choice, and then in good faith marries him, believing him to be honest and worthy of her trust. She fully performs her contract and all that remains to complete it is for him to make her a deed. This he faithlessly fails and refuses to do. The authorities are uniform that marriage is the greatest consideration that one can give. Certainly the court will be slow to refuse to enforce a contract of this kind. All the authorities hold that antenuptial contracts should be liberally construed. *McNutt* v. *McNutt,* 2 L. R. A. (Old Series), 372 (Ind.); *May* v. *May,* 7 Fla. 207, 68 Am. Dec. 431; 14 Am. and Eng. Ency. Law (1st Ed.), p. 550; *Garvin* v. *Gordon,* 38 Miss. 205; *Stevenson* v. *Renardet,* 83 Miss. 392, 35 South. 576; note to *Merritt* v. *Scott,* 50 Am. Dec., page 373.

*Leftwich & Tubb,* for appellee.

(1) It will be observed that the Statute of Frauds, chapter 134, section 4775, Code of 1906, comes directly into play. The language we rest upon is as follows:

"An action shall not be brought whereby to charge a defendant or other party upon any agreement made

upon consideration of marriage, mutual promises to marry excepted, . . . unless the terms of agreement upon which such action may be brought or some memorandum or note either of which shall be in writing signed by the party to be charged therewith or some person by him or her thereunto lawfully authorized."

This statute was intended to prevent frauds and perjuries, and there is no instance in which frauds and perjuries are more likely to prevail than that of marriage agreement or contracts and settlements, where alienation afterwards takes place, and there is no relaxation of the rule in antenuptial agreements as far as we have been able to discover. 21 Cyc. 1243, 1244, 1271.

That part of the statute in the following words, "mutual promises to marry excepted," simply refers to the reciprocal promises to marry made face to face by the man and woman which is enforced on public policy, and has no reference to the agreement on the part of either spouse to convey the other property in consideration of the promise. This provision of the statute almost universally prevails in common law countries and states, and under it everywhere oral promises to convey land or property in consideration of marriages are held void. *Hunt* v. *Hunt,* 59 L. R. A. 306; *Chase* v. *Fitts,* 132 Mass. 359. Innumerable cases could be cited, but these are sufficient.

(2) Marriage is not such a part performance as takes the case out of the statute. *Peck* v. *Peck,* 11 Amer. State Rep. 244; *Hunt* v. *Hunt, supra,* and note thereunder; *McNulty* v. *McNulty,* 120 Ill. 26.

(3) Specific performance in equity is a proper remedy but all the rules hedging in and limiting that remedy must apply, and it must be always understood that the matter of specific performance of agreement rests largely in the discretion of the trial court, and a decree of the trial court will not be reversed save for abuse of discretion. We concede that the premises may be couched

in the form of letters but such letters must sufficiently and clearly set forth the terms of the agreement, so that they will satisfy the statute. 21 Cyc. 1244 and cases.

There must be absolute certainty in all the parts of the agreement. *Stoddard* v. *Tuck*, 5 Md. 18; *Preston* v. *Preston*, 95 U. S. 200, 24 L. C. R. 494; *Austin* v. *Robinson*, 49 Miss. 348; Brame & Alexander's Digest, 936.

In *Austin* v. *Robinson, supra,* the following language is used in the Digest, *supra*: "The jurisdiction to enforce specifically a contract, though said to rest on judicial discretion, is exercised in accordance with sound and fixed rules. The agreement must be certain and mutual, not hard and unconscientious, must rest on a consideration, and performance must be necessary and practicable; it is also necessary that the remedy at law by damages be inadequate.

In *Preston* v. *Preston*, Justice Field uses the following language: "It is a familiar rule in this branch of the law that a contract, which a court of equity will specifically enforce, must be certain as well as fair in its terms; and the certainty required has reference both to the description of the property and the estate to be conveyed. Uncertainty as to either, not capable of being removed by extrinsic evidence, is fatal to any suit for a specific performance."

The subject-matter of the contract in all bills for specific performances must be definitely described, and there must be no uncertainty or patent ambiguity on the face of the instrument. Some of the courts have said that prenuptial contracts are liberally construed in favor of the wife, but this only means that the court is not very technical in dealing with the crude language liable to be used in unstudied letters and writings, and does not mean that the statute of frauds and perjuries can be set aside and ignored. Complainant's counsel in his brief cites *Watson* v. *Duncan*, 84 Miss. 763, and *Stevenson* v. *Renardet*, 83 Miss. 392, but in neither case was there a·

question of the definiteness of description required in agreements for the conveyance of lands, which is raised and decided in this case.

Complainant's counsel cites several cases from other states which are not strictly in point, but the very states from which these cases are cited and numerous others which can be cited, have engrafted such exceptions on the statute of frauds as to almost emasculate it, and this court will observe that from the very beginning the courts of the state of Mississippi have held strictly to the spirit as well as to the letter of the statute of frauds, and by so doing we have been saved endless confussion and have imposed certainty upon the laws of the state. The liberal construction that the courts speak of, and referred to by Judge Calhoun in *Stevenson* v. *Renardet,* is nothing more than an expression of indulgence for crudeness and in artificiality in the writing upon which is based the recovery and no court has as yet intimated that it is willing to set aside a positive statute as wholesome as the statute of frauds in construing marriage settlements. Our own courts have dealt fully with this question, and we need not leave our state to finally settle it, as we believe. *Allen* v. *Bennett,* 8 S. & M. 672; *Swayze* v. *McCrossin,* 13 S. & M. 317; *McGuire* v. *Stevens,* 42 Miss. 724; *Holmes* v. *Evans,* 48 Miss. 247; *Fisher* v. *Kuhn,* 54 Miss. 480; *Bowers* v. *Andrews,* 52 Miss. 606; 20 Cyc. 270, note 70, and cases.

Anderson, J., delivered the opinion of the court.

The appellant, Mrs. Pearl Cole, filed a bill against her husband, A. J. Cole, the appellee, for the specific performance of a prenuptial contract to convey her certain lands, owned by him, in consideration of marriage. The appellee demurred to the bill, which demurrer was sustained, and, appellant declining to amend her bill, the same was dismissed, from which she prosecutes this appeal.

The substantial averments of the bill are as follows: That the consideration for appellant's marriage to the appellee was a prenuptial promise by the latter to convey to appellant one of four tracts of land owned by him, to be selected by her. That this contract is embodied in two letters, one of which was written February 17, 1909, and is as follows:

"Houlka, Miss., Feb. 16, 1909.

"Miss Pearl Cole—

"Dear Miss: I received your most kind and welcome letter. Oh, how glad I was to hear from you. I have no news to tell you. I wrote you a letter last Saturday, the 13th. I hope you have got it. Miss Pearl, your Pa and Ma do not want you to marry no one. If I was in your place, I would pay no attention to what they say about marrying. If you will stick to me, you will come away from there. I have got plenty of money to take care of you after I get you. I will make you a deed to a piece of land is worth twenty-five hundred dollars after we marry. Miss Pearl, I will be at your house this coming Sunday. Be sure and be at home. I will freely give my life for you. I love you better than any lady I ever saw. Be sure and write as soon as you get this note. I will come to a close. Miss Pearl, I am the best friend you have got on earth.

"A. J. Cole."

That the other letter, which was lost and for that reason could not be produced, was written on the 24th of February, 1909, in which appellee stated that, if appellant would marry him, he would make her a deed to either one of four tracts of land owned by him, which was all the land he owned, each tract worth two thousand and five hundred dollars, she to select the one she desired a deed to. That thereupon, in consideration of the terms contained in said letters, they were married and lived together about fourteen months, when the ap-

pellee "deliberately carried her home and refused to live with her further." That it was understood and agreed between the appellant and the appellee, both before and after they were married, that her choice of his four tracts of land was one in Chickasaw county, described in the bill. That after their marriage the appellant frequently demanded of the appellee that he comply with his promise to convey her said tract of land, which he refused to do.

The demurrer raises the question whether the contract evidenced by these letters is within the statute of frauds (section 4775, Code of 1906), which declares void contracts in consideration of marriage and contracts for the sale of land, unless such contracts are in writing, signed by the parties sought to be charged. Clearly the letters themselves did not certainly identify the land. The rule is, however, that if the description contained in the writing points to specific property, parol evidence is admissible to identify it, because that is certain which is capable of being made certain. In 20 Cyc., p. 270, the rule is well stated thus: "In general, the description of the land in a memorandum of a contract for sale of lands must be sufficiently definite to identify the land by its own terms, or by reference in it to external standards in existence at the time of the making of the contract and capable of being determined beyond dispute."

Do the letters, by their terms, refer to any external standard, in existence at the time they were written, from which the land can be certainly identified by parol testimony? The letters point out neither the state nor the county in which the four tracts of land are situated, the quantity of land in each tract, nor any description whatever of the tract to be conveyed, except that it is one of four tracts owned by the appellee, to be selected by the appellant. For all that appears in the letters, the four tracts may or may not be in the state of Mississippi, or even in the United States. Can it be said that (quot-

ing from the bill the contents of the lost letter) "one
of his tracts of land, worth two thousand and five hun-
dred dollars, stating that he had and owned only four
tracts of land, either of which was worth that amount,
and that he would take her to look over them, and she
could take her choice of said places," is such a reference
to an external standard, in existence at the time the let-
ters were written, as that the land intended could be
certainly identified by parol? It is true that the four
tracts of land were in existence at the time; but this was
insufficient to meet the requirements of the rule. The
external fact (if it may be called a fact) referred to by
the letters, from which alone the lands were to be identi-
fied, was the right of choice of one of the four tracts, to
be thereafter exercised by the appellant. This was no
external standard in existence at the time the letters
were written. It was a matter about which she could
have changed her mind every day, or oftener, until the
final selection was made. As said in *McGuire* v. *Stevens*,
42 Miss. 724, 2 Am. Rep. 649: "Extrinsic evidence is
admissible only to construe and apply the terms of the
writing." How could the terms of these letters be con-
strued and applied, so as to ascertain what land was in-
tended, when, at the time they were written, no selection
had been made by the appellant, and none was to be
made until afterwards.

As to what land was selected by the appellant rests
entirely in parol; in fact, the whole matter of the identi-
fication of the land rests in parol. In *Holmes* v. *Evans*,
48 Miss. 247, 12 Am. Rep. 372, the contract was to con-
vey a "lot on the corner of Main and Pearl streets, city
of Natchez, Adams county, Mississippi," which the court
held to be within the statute of frauds, saying: "In the
case under consideration, the memorandum or receipt
refers to no extrinsic fact by which it could be ascertained
on which corner of Main and Pearl streets the land in
controversy is situated. And to allow parol evidence

to establish its locality would be in violation of the statute, in allowing that to pass by parol which the statute says shall not so pass, and would open the door to all the mischiefs intended to be provided against by the statute." The right of the appellant to make choice of the tract of land which appellee was to convey to her cannot be said to be an "extrinsic fact," to which resort may be had by parol. The right to choose is not an "extrinsic fact." It is a mere state of mind, and makes the identification of the land even more vague and uncertain than the letters themselves. The object of the statute of frauds was to prevent frauds and perjuries. The contract here clearly comes within the evils sought to be avoided by the statute. To illustrate: If this case were tried, the appellant's evidence might tend to prove that she had selected a certain tract of land; while that of appellee might tend to show that she had either made no selection at all, or had selected a different tract from the one claimed by her to have been selected.

The principle declared by this court in *Stevenson* v. *Renardet,* 83 Miss. 392, 35 South. 576, and other authorities, to the effect that prenuptial contracts are to be construed liberally in favor of the wife, may not be so extended, as is sought to be done here, as to overturn the statute of frauds. The provision of the statute of frauds, which declares void contracts for the sale of lands unless in writing, applies, whether such contracts are made in consideration of marriage or otherwise. In other words, a contract to convey land in consideration of marriage will be void under the statute of frauds, if it would be void were the consideration money or something else than marriage. The decisions of this court construing the provision of the statute of frauds requiring contracts for the sale of lands to be in writing apply with equal force to contracts to convey lands in consideration of marriage. There can be no possible reason for the application of any different principles. This

court has consistently refused to ingraft any exceptions on the statute of frauds. Where parties place their contracts of marriage on a monetary basis, they have no right to complain that the courts apply to such contracts the same principles of law which govern other transactions based on like considerations.                    *Affirmed.*