Scott *v.* Munn

No. 42445          November 12, 1962          146 So. 2d 564

*B. N. Knox, Jr., Hugh N. Clayton,* New Albany, for appellant.

*L. G. Fant, Jr.,* Holly Springs; *Mitchell, McNutt & Bush,* Tupelo, for appellee.

RODGERS, J.

This case came to this Court from the Circuit Court of Marshall County, Mississippi. Appellee obtained a judgment against appellant growing out of a lawsuit filed by Marvin Munn, during his lifetime, for damages growing out of an automobile accident, in which it was alleged that Mrs. Munn was injured. After the death of Mr. Munn, appellee was appointed administratrix of his estate, and, over the objection of the defendant, was permitted by the court to revive the action in her name, as administratrix.

It appears from the testimony that on the 12th day of May 1958, Marvin Munn was driving his Dodge sedan in an easterly direction on Highway 78 in Marshall County, Mississippi; that he was, at the time, traversing a curve a short distance west of Stover's Store, when Goldie Lee Metcalf, an agent, chauffeur and servant of the

defendant, passed Mr. and Mrs. Munn in a Chevrolet truck, and, in so doing, collided with the automobile driven by Mr. Munn.

Mrs. Munn did not consider a sudden jerk to her head and neck significant at the time, although she suffered some pain. Several hours later, however, when the pain became so intense she could not sleep, she found she had considerable injury to her neck. She went to the hospital the next day and stayed two weeks, and stayed in bed three months thereafter at the home of her daughter. Testimony in the record shows that Mrs. Munn had a serious injury to her neck and spine. There was some question, however, as to how much of this injury was brought about by the accident, inasmuch as she had been treated for neck and spinal trouble before. X-ray pictures had been taken during the first treatment, and again after the accident. The doctor's testimony showed some additional injury and change had occurred after the first X-ray pictures were taken, and it was the opinion of the specialist that: "* * * after studies * * * patient had some old arthritic changes and some old discogenic changes, in all likelihood aggravated by the injury."

It appears from the record in this case that the two real issues presented for determination by this Court are: (1) Did the various items of damage set up in the declaration survive the death of plaintiff under our statute? (2) Should we dismiss the appeal because appellant failed to prosecute with diligence?

Before proceeding to the foregoing issues, let us pause to point out that we are of the opinion that there is sufficient evidence in the record from which the jury could have determined that appellee was injured in the accident, caused by the negligence of appellant's agent, and sufficient proof to show that the hospital, doctors, nurses and drug bills were shown by the testimony. The testimony showed that during the period while plaintiff's wife was in bed that her husband lost her services.

The declaration in this case sought recovery of damages for hospital and medical expenses, including nursing and drug bills, loss of services, companionship and consortium of the plaintiff's wife, Mrs. Jane Munn. The first question to be determined by this Court is, was the cause of action filed by the late Marvin N. Munn personal so that it abated, in whole or in part, at his death?

Sec. 609, Miss. Code 1942, Rec., is in the following language: "Executors, administrators, and temporary administrators may commence and prosecute *any personal action* whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted. And they shall also be liable to be sued in any court *in any personal action* which might have been maintained against the deceased." (Emphasis supplied.)

The pertinent part of Sec. 611, Miss. Code 1942, Rec., is as follows: "When either of the parties to *any personal action* shall die before final judgment, the executor or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator." (Emphasis supplied.)

These two code sections were formerly in one section, Hutchinson's Miss. Code 1848, Chap. 49, Art. 1 (119), p. 672, and were written in the following language: "Actions that Survive for or against Executor or Administrator. All actions which have been commenced and prosecuted for or against any testator or intestate (except actions of slander, and for injuries or torts done to the person), shall, and are hereby declared to survive for and against executors and administrators, with the same effect that they might or could have been had or maintained, for or against the testator or intestate; any law, usage or custom, to the contrary in anywise notwithstanding."

The language of the two Code Sections as they now appear, (supra Code), have remained as they are since

Miss. Code 1871, Sec. 1176, with perhaps one minor change: the words "temporary administrator" were at first written "administrator ad colligendum." It will be observed from the language of the foregoing sections of the 1942 Code, that the actions which may be said to survive the testator or intestate, are *"personal actions."*

Under the common law, a personal action abated upon the death of one of the parties, it has been said that "This rule is expressed in the maxim, Actio personalis mortiur cum persona. The line of demarcation at common law separating these causes of action which survive from those which do not is that in the first the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the *person,* and the property and rights of property affected are merely incidental." (Emphasis supplied.) 1 C. J. S., Abatement and Revival, Sec. 132, pp. 178-179. See also 1 Am. Jur., Abatement and Revival, Sec. 76, p. 67; 1 Am. Jur. 2d, Abatement, Survival and Revival, Sec. 51, p. 86.

This rule "has never been a favorite with the courts", 1 Am. Jur. 2d, Abatement, Survival and Revival, Sec. 51, p. 87, and the courts have criticized the rule. Early in the history of English statutory Law of Survival and Causes of Action, the rule was modified so as to enlarge the number of causes that survived and to restrict the operation of the rule in those causes in which the common-law rule was retained. 1 Am. Jur. 2d, Abatement, Survival and Revival, Sec. 52, p. 88; 1 Am. Jur., Abatement and Revival, Sec. 87, p. 73. Lord Campbell's Act, Sec. 1453, Miss. Code 1942, Rec., (passed in England in 1846), is said to be one of the statutes enacted to prevent the hardship caused by the common-law rule that an action died with one of the parties in ex delicto action. 16 Am. Jur., Death, Sec. 49, p. 39. A history of this act

will be found in the case of I. C. R. R. Company v. Fuller, et al., 106 Miss. 65, 63 So. 265.

In the case of McNeely v. City of Natchez, 148 Miss. 268, 114 So. 484, this Court said: "It cannot be that the legislature intended that strictly penal statutes should be enforced against the dead, but intended that the strict line of demarcation should be followed by the courts in the definition of 'personal actions' in contradistinction to the definition of 'penal actions'." And then said:

"We conclude that the term 'personal actions' in its broadest sense includes all actions except those relating to or for real estate, but in this statute is used in the restricted sense as defined in Corpus Juris and authorities there cited, heretofore set out.

"Statutory penalties may not be enforced against the dead; therefore this cause cannot be revived in the name of the administratrix. * * *"

In the case of Catchings v. Hartman, 178 Miss. 672, 174 So. 553, this Court held that an action for libel and slander would not survive the death of the plaintiff, and in that case the Court cited the McNeely case, supra, and said: "* * * it was held that this statute, being in derogation of the common law, must be strictly construed, and that the term 'personal action' must be interpreted according to its strictly technical meaning; and the court thereupon so interpreting the meaning, held that a personal action under the said statute, is one 'brought for the recovery of personal property, for the enforcement of some contract or to recover damages for its breach, or for the recovery of damages for the commission of an injury to the person or property."

This Court has decided other cases involving personal actions that survive and may be revived in the name of the representatives, but we find no case in our Mississippi reports on the question of medical expenses, lost services, and consortium and companionship as a result of an injury to the wife of a deceased plaintiff.

We find, however, that Supreme Courts of other states have passed upon this question.

In the case of James Cregin v. The Brooklyn Crosstown R. R. Co., 75 N. Y. Rep., 192, a suit was brought by plaintiff to recover for loss of services and society of his wife, and for expenses of medical attendance, etc., and complainant alleged in substance that defendant-Railroad injured complainant's wife upon one of its cars, and upon the death of complainant the action was revived to deceased's personal representative. Sec. 1 of the statute involved in that case preserved from abatement by death actions "for wrongs done to the property, rights, or interests of another;" and the Court said: "This language is very broad and embraces a large class of actions. It is not confined to direct injuries to property, but includes all injuries to the rights or interests of a deceased party, except such as are enumerated and exempted in the following section: (2) These are, actions for slander, libel, assault and battery, false imprisonment, and actions in the case for injuries to the person *of the plaintiff.*" And the Court further said: "The wrong done in the present case is alleged in the complaint to have been a wrongful injury to the person of the plaintiff's wife, whereby she was rendered permanently unable to attend to her household and other duties and the plaintiff was obliged to expend sums of money in procuring medicines and necessaries and employing physicians to treat her for her injuries, and that he had been and would be permanently deprived of her services and comforts." And the Court said: "We think this was a wrong done to the rights and interests of the husband. He had a right to the services of his wife, they were of pecuniary value to him, and any wrong, by which he was deprived of those services, or put to expense to remedy or palliate the consequences of the injury to his wife, was a wrong done to his rights and interests. Adopting the construction of pecuniary

rights and interests only are protected by the statute, these were plainly involved, and if the pleader had left out the word 'comforts', the complainant would have disclosed an injury to pecuniary interests exclusively.''

This case was later tried in the lower court and came back to the Court of Appeals under the style of Thomas Cregin, Admr. v. Brooklyn Crosstown R. Co., (supra), 83 N. Y. Rep. 595, and the Court said: ''Upon the trial the court, in submitting the case to the jury, mingled these two classes of damage — those which involved pecuniary loss and diminished the estate, and those which only affected the personal comfort of the husband. * * * At the close of the charge the defendant's counsel excepted to so much of the charge as submitted to the jury the question of damages for the loss of society, and so much of it as related to 'comfort' independent of services.'' And the Court also said: ''The intestate in his lifetime, may justly be said to have had one cause of action against the defendant, viz., for damages resulting to him from personal injuries wrongfully done to his wife; but while the cause of action was in one sense single, his rights to damages therefor was compound, and consisted of several and diverse elements. The loss of his wife's services, the expenses necessarily incurred by reason of the injury, were a pecuniary loss, and diminished his estate, and so survived to his administrator; but the loss of his wife's society, and the comforts of that society, and the right of action for that, died with him. It cannot be said to have survived to his personal representatives because something else did.''

In the case of Smith v. Lehigh Valley R. Co., 81 A. 554, (Penn. 1911), the Supreme Court of Pennsylvania had before it for determination the question: ''Does action brought by husband for negligent injury to wife not resulting in her death survive to his personal representatives?'' The Court pointed out that: ''At the time the statute was passed, a husband had the com-

mon-law right 'to commence and prosecute' an action in tort to recover for the loss of his 'wife's society and services, and for expenses incurred.' 21 Cyc. 1526.'' The Court held that ''wrongs done to the person'' which did not survive were wrongs done to the person of the deceased, and not his wife, and that the case ''could be 'prosecuted' by his administratrix.''

In the case of Margaret Howard v. Emma Lunaburg, Execx., 192 Wisc. 507, 213 N. W. 301, 57 A. L. R. 346, a wife sued for the alienation of her husband's affection, and although the case is on the question of the right of the wife, it nevertheless throws light on the question here involved. The Court said: ''The husband is entitled to the services of his wife; hence, if he has been deprived of them, he has suffered a damage to his property rights. But his wife is not entitled to the services of her husband, so if she loses them she has parted with nothing of financial value. She still has her right of support. Damage to feelings, or loss of consortium, does not constitute a property right or interest within the meaning of the statute, for, if it did, all actions would survive, and that was not the legislative intent.''

██ █ We are now therefore of the opinion that the action in this case for medical bills, — doctors', nurses', and drug — and the services of the wife of the deceased-plaintiff survived his death, but that the claim for companionship and consortium died with the husband-plaintiff and cannot be revived. We are also of the opinion that the plaintiff in the court below made out a case of liability due to Marvin N. Munn against defendant for the expenses incurred as a result of the injury to Mrs. Jane Munn, and judgment insofar as liability is concerned should be sustained. We are unable to determine from the record that part of the verdict was for consortium and companionship. The case is reversed so that another jury may pass upon damages due under

the allegations of the declaration, other than for consortium and companionship.

Affirmed as to liability, and reversed upon damages alone, in accordance with the foregoing.

Affirmed in part, and reversed as to damages only.

*McGehee, C. J., and Ethridge, Gillespie and Jones, JJ.,* concur.