248 Miss. 107 (1963)
158 So.2d 740
KALAVROS
v.
DEPOSIT GUARANTY BANK & TRUST COMPANY, et al.
No. 42834.
Supreme Court of Mississippi.
December 16, 1963.
Courtney & Echols, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellant.
*110 J.E. Skinner, Henley, Jones & Henley, Jackson, for appellee.
*111 RODGERS, J.
This action originated from a claim filed by Katherine Kalavros in the estate proceedings of Theo Grillis, deceased, and from a separate suit filed by appellant against the executors of the estate. The claims involve the same issues and were tried on one record.
*112 The testimony and pleadings reveal that Theo Grillis was a native of Greece, born on the historic Island of Patmos, about the year 1896. He immigrated to America while yet a young man and accumulated a large estate in Mississippi. In 1929 he married Themis Kalavros, who was also a native of Greece. This marriage was terminated in 1948 when Themis Grillis lost her life as the result of an automobile accident. In 1950, Theo Grillis and Dora Allred were united in marriage, and from this union, one son, Lucas Theologue Grillis, was born. Theo Grillis and Dora Allred Grillis were divorced in 1952, and the father was awarded custody of his son. In 1956, Theo Grillis suffered a nervous breakdown and was adjudicated incompetent. The son was placed in the Methodist Orphanage. The following March, 1957, Theo Grillis was adjudicated to have been restored to his competency.
In the summer of 1958, Theo Grillis, in company with his son, visited relatives on the Island of Patmos in Greece, for a period of about six months, Katherine Kalavros, sister of Theo Grillis' first wife, came to visit them at the home of Theo Grillis' step-mother, and the evidence reveals overwhelmingly, that Theo Grillis and Katherine Kalavros "fell in love." Theo Grillis asked her to marry him and become the mother of his son. After Theo Grillis returned to Jackson, he wrote many letters and sent many telegrams to Katherine Kalavros indicating his desire to have her come to Jackson for the purpose of marriage. He went to great expense and effort to obtain her admission into the United States, and finally obtained for her a temporary, thirty-day, visa.
In 1961, Katherine Kalavros came to Jackson and lived in the home of Theo Grillis for a period of nine months, from January 16, 1961, to October 15, 1961. Immediately after the arrival of Katherine Kalavros, Theo Grillis filed a petition in chancery court, requesting *113 the court to grant him the custody of his son, setting out that he had arranged for his sister-in-law, Katherine Kalavros, to come to this country from Greece to take care of his home and rear his minor son. The prayer of the petition was granted and petitioner's son, Lucas, went to live with petitioner under the care and tutelage of Katherine Kalavros.
Theo Grillis and Katherine Kalavros were devout members of the Greek Orthodox Catholic Church. The religious belief of the church prohibited a marriage between a brother-in-law and sister-in-law. The parties believed, however, this impediment might be removed under the jurisdiction of the church in the United States. Theo Grillis never succeeded in obtaining the necessary dispensation to permit their marriage in the church. He considered a civil marriage, but before this could be accomplished, he suddenly died October 15, 1961. A short time before his death, he again reaffirmed his intention to marry Katherine Kalavros as soon as he was well.
The will of Theo Grillis, executed July 7, 1958, (before Katherine Kalavros came to America) was probated on October 19, 1961. Thereafter, the claim of Katherine Kalavros was filed and the claimant's separate suit was instituted, as above set out. The suit against the estate sought to establish that Theo Grillis contracted to marry appellant or to make a will bequeathing to her one-half of the estate; or to will her a sum of money equivalent to one-half of his estate; or, in the alternative, that Katherine Kalavros was entitled to compensation for services rendered to decedent Theo Grillis on a quantum meruit basis.
The chancellor, after having heard the testimony, rejected the claim of Katherine Kalavros, and dismissed her suit against the estate of deceased.
Appellant has appealed to this Court, and assigned as error the failure of the trial court to allow her claim *114 as set out in her original bill, and alleges particularly that the finding and decree of the trial court are contrary to the manifest weight of the evidence adduced.
(Hn 1) The original bill alleges that the agreement and services rendered and tendered by complainant to Theo Grillis and his minor son, Lucas, and the consideration furnished him whereby she changed her whole way of life in her native land and came to the United States and served him until his death, was with a contract to marry. Moreover, it is stipulated that she carried out her part of the contract or service to the deceased Theo Grillis, and was ready, willing and able to carry out the marriage agreement. The bill of complaint, however, is not based upon a breach of promise to marry for two apparent reasons: (1) It is obvious that the deceased Theo Grillis intended to marry Katherine Kalavros as shown by his statement to complainant just prior to his death. He was making an effort to marry "in the church" at the time of his death. (2) An agreement to marry necessarily implies that the parties will live to perform the contract, and the death of either party before the breach of the contract terminates it. 11 C.J.S., Breach of Marriage Promise, § 11, p. 776; 2 Am.Jur.2d, Abatement, Survival and Revival, § 87, p. 111. Cf. Scott v. Munn, 245 Miss. 120, 146 So.2d 564.
(Hn 2) The chancellor rejected the claim of appellant, holding that the facts in this case fail to establish an irrevocable contract between the parties, which required Theo Grillis to make a will devising one-half of his property to appellant. (Hn 3) We are of the opinion that the chancellor was correct in so doing, because the evidence is not "clear, definite and certain", as is required by the rule of law heretofore recognized in cases in this State where the contract is sought to be established to make a will. See In Re Boyd's Estate, 228 Miss. 526, 87 So.2d 902; In Re Reineck's Estate, 225 Miss. 376, 83 So.2d 438. See also 94 C.J.S., Wills, § 113 *115 (2), p. 868; Cox v. Williamson, 124 Mont. 512, 227 P.2d 614; Feiden v. Gibson, 218 S.W.2d 105 (Mo. 1949); Dau v. Pence, 16 Wash.2d 368, 133 P.2d 523; In re Swartwood's and Welsher's Estates, 198 Wash. 557, 89 P.2d 203; Hammel v. Foor, 359 Mich. 392, 102 N.W.2d 196.
(Hn 4) The burden was upon appellant to establish her claim as set out in the original bill, and under the facts here presented, we cannot hold the chancellor was manifestly wrong, since the testimony introduced did not clearly establish her claim. Greenwood v. Commercial National Bank of Peoria, 7 Ill.2d 436, 130 N.E.2d 753.
Moreover, there is no evidence of any agreement in writing, signed by Theo Grillis, whereby he agreed to make a will devising one-half of his property to Katherine Kalavros.
(Hn 5) We agreed with the rule announced in the Central Shoe Company v. J.P. Conn & Co., 160 Miss. 151, 133 So. 126, wherein it is said that telegrams and letters may be sufficient memoranda of a promise or a contract to take such an agreement out of the statute of frauds. A promise or a contract need not be fully set out in one writing. See Ludke Electric Co., Inc. v. Vicksburg Towing Co., 240 Miss. 495, 127 So.2d 851.
The difficulty we are experiencing in the instant case is not so much the rule of law to be applied, as it is in finding facts and evidence introduced herein on which to sustain the thesis claimed by appellant. Taking all of the letters, telegrams and Christmas cards here in evidence, we cannot find sufficient evidence on which to base an opinion that the chancery court reached a conclusion manifestly wrong.
Appellant cites the case of Merchants National Bank of Mobile v. Cotnam, 34 So.2d 122, an Alabama case, in which that Court held a claimant was entitled to enforce her verbal agreement against the estate of the *116 deceased, and said: "The claim undertakes to set up facts and alleges that claimant, by virtue of said agreement, is entitled out of his estate to a sum of money equal to one-fifth of its value at the time of his death. Such a claim is enforceable at law, as well as in equity."
In the case of Pountaine v. Fletcher, 158 Miss. 720, 126 So. 471, this Court pointed out that when an alleged contract between the lessor and lessee of a hotel, required lessee to do certain repairs, and such work was fully performed by the lessee within one year, and there was nothing more to be done or performed under the contract, except payment, the statute of frauds had no application. The opinions in the foregoing cases are based on the general rule that the statute of frauds does not apply to an executed contract and is admirably expressed in 49 Am. Jur., Statute of Frauds, § 550, pp. 853-854, in the following language: "* * * Another general limitation upon the assertion of the statute of frauds arises in cases where the contract has been executed by performance on one or both sides. The courts have repeatedly reiterated that the statute of frauds only applies to executory, as distinguished from executed, contracts; if an oral contract, otherwise within the statute, is completely executed or performed it is taken out of the operation of the statute. This is upon the basis of the often-repeated theory that the statute of frauds was intended to prevent fraud and not to be a cloak for fraud or a means of perpetrating fraud, under this rule of completed performance, suit may be brought upon the contract in a court of law over the objection that the contract was within the statute of frauds. * * * When an oral contract has been fully carried out according to its terms, it is an accomplished fact, and the statute no longer cuts any figure in the transaction, and the contract becomes binding on all parties thereto." See Washington v. Soria, 73 Miss. 665, 19 So. 485, overruling Hairston v. Jaudon, 42 Miss. 380.
*117 The pleadings and testimony in this case show that appellant did not fully perform the alleged contract to marry Theo Grillis, because, it is said "She was prevented from completing the agreement by the death of the said Theo Grillis", and that "The untimely death of Theo Grillis prevented her compliance" with the marriage contract. The decisions of this State have followed the rule that a partial performance of an oral contract to convey land is not sufficient to take the contract out of the operation of the statute of frauds. Cole v. Cole, 99 Miss. 335, 54 So. 953; Washington v. Soria, 73 Miss. 665, 19 So. 485; McGuire v. Stevens, 42 Miss. 724; Box v. Stanford, 13 S & M 93 (Miss.). See also 49 Am. Jur., Statute of Frauds, § 425, p. 730; 37 C.J.S., Statute of Frauds, § 248, p. 755.
The claim in the instant case is not based upon an alleged verbal contract to pay appellant a certain amount for services performed, as was true in the case of Stephens v. Duckworth, 188 Miss. 626, 196 So. 219, but rather an alleged understanding growing out of the circumstances sufficient to establish a contract "to devise unto affiant a one-half of his property."
This Court pointed out in Wells v. Brooks, 199 Miss. 327, 24 So.2d 533, that a parol promise to transfer property by will or deed, or otherwise, is within the statute of frauds, citing many cases. See also to the same effect, Collins' Estate v. Dunn, 233 Miss. 636, 103 So.2d 425.
We are of the opinion from the foregoing that the chancellor was correct in disallowing the claim of appellant and holding that the facts and circumstances in this case were not sufficient to establish a contract to devise appellant one-half of his property.
The final question for determination in the instant case is whether or not appellant is entitled to recover for services rendered Theo Grillis on a quantum meruit basis.
*118 (Hn 6) A recovery for services rendered on a quantum meruit basis is permitted because the law will imply a contract to pay for services where the circumstances are such as to warrant an inference of an understanding by the person performing the work, that the person receiving the services, intends to pay for it. See 58 Am. Jur., Work and Labor, § 3, p. 512. See also § 6, supra, p. 514, where it is said: "The general rule is that where services are rendered by one person for another, which are knowingly and voluntarily accepted, without more, the law presumes that such services were given and received in the expectation of being paid for, and implies a promise to pay their reasonable worth. * * *
"A promise to pay for services is implied when they are rendered and received in such circumstances as authorize the party performing to entertain a reasonable expectation of payment for them by the party benefited. However, the law will not imply a promise to pay the value of services rendered and accepted, where there is proof of a special agreement to pay therefor a particular amount or in a particular manner, or proof of an intent or agreement that the services were to be gratuitous."
There are several cases reported from our own Court in which the testimony has been sufficient to establish an implied contract to pay for services on a quantum meruit basis. For example, the First National Bank v. Owen, 177 Miss. 339, 171 So. 4. In that case a 75-year old widow, suffering from numerous infirmities, went to the home of a friend to live. It was agreed that she would make a will devising her estate to her friend at her death. Just before her death, she wanted a friend to "get the man at the bank so that I can make Rosa my will." There was ample evidence to establish an agreement to make a will devising her property to her friend. After the death of the widow, the friend probated her claim for services rendered. The Court *119 said: "We are of the opinion that the assignment is not well taken. Here the parties were not related by blood and only remotely by marriage; there are no circumstances in evidence which cast any moral obligation upon appellee to render the services; the decedent rendered no services in return, but instead had to be waited on like an invalid; the decedent was well able to pay for the care and support furnished. These facts are amply sufficient to raise an obligation on the part of the decedent to pay therefor at what the care and support was reasonably and justly worth, unless there were express proof that they were not to be paid for, or were to be compensated at some other rate. See also the following cases to the same effect: Collins' Estate v. Dunn, 233 Miss. 636, 103 So.2d 425; In Re Hutchinson's Estate, 236 Miss. 507, 110 So.2d 926; Hart v. Norton, 237 Miss. 566, 115 So.2d 540; Tarver v. Lindsey, 161 Miss. 379, 137 So. 93.
In the case of Stephens v. Duckworth, 188 Miss. 626, 196 So. 219, this Court held that although an oral contract to convey the home of a father to his daughter, in return for care during his lifetime, was unenforceable; nevertheless, since there was a contract for services, the daughter could recover a fair value for her services on a quantum meruit basis.
In the case of Hoyle v. Smith, 113 Miss. 729, 74 So. 611, this Court reached a different conclusion in a case where a sister took care of her infirm, elderly sister during her last years. There was no contract, expressed or implied, to compensate her for her services out of the corpus of the estate. In holding that recovery could not be had from the estate of the deceased sister, this Court said: "The claim of Mrs. Smith might naturally arouse one's sympathy and appeal to one's sense of justice. But there can be no obligation on the part of the estate here proceeded against in the absence at least of an implied obligation or contract. The proof *120 shows without dispute that the two old sisters, Mrs. Smith and Miss Hoyle, lived together upon their joint property as members of the same household, and that the attention and care which Mrs. Smith lavished upon her invalid sister was prompted by feelings of natural love and affection, and that her services as caretaker were not rendered in pursuance of any contract whatever or with any expectation of compensation."
(Hn 7) Without belaboring the thesis that there is a presumption of gratuity for mutual services growing out of a family relation existing between persons living in the same household (98 C.J.S., § 16, p. 740; 58 Am. Jur., Work and Labor, § 11, p. 519), (Hn 8) we have reached the conclusion that the testimony shows that the services performed by appellant were not under a contract, expressed or implied, in which it was understood that Theo Grillis would pay Katherine Kalavros for her services, but that her services were gratuitous and rendered in furtherance of the plan of the parties to marry. Death cut these plans short, leaving the estate of Theo Grillis to be administered according to his original plan and will, made before Katherine Kalavros came into his life. Courts may sometimes point out inequities and injustices created by thoughtlessness and carelessness of men, (Hn 9) but courts do not have, and should not have, power to make contracts where none exists, nor take property from one person, like Robin Hood, and give it to another.
Judgment and decree of the trial court will now be affirmed.
Affirmed.
Ethridge, Gillespie, McElroy and Jones, JJ., concur.