In Re: Boyd's Estate
Boyd, Executor, et al. *v.* Belin

No. 40199          June 11, 1956          87 So. 2d 902

*Edward J. Currie, Edward J. Currie, Jr.,* Hattiesburg; *Youngdahl & Glick,* Los Angeles, California, for appellants.

*Morse & Morse,* Poplarville, for appellee.

APPELLANTS IN REPLY.

GILLESPIE, J.

This case involves (1) an alleged oral contract to make a will, and whether the chancellor was manifestly wrong in finding that there was no meeting of the minds of the parties to the alleged contract (our decision makes it unnecessary to consider whether the contract was enforceable if it in fact existed); and (2) the construction of a will.

John T. Boyd died intestate in 1935. His heirs were his widow, Mrs. John T. Boyd, and three children, Mrs. Youngdahl, Mrs. Simpson, and Clyde Boyd. His estate consisted of two bank accounts totaling about $1400.00, and some school warrants of unknown value. There was no administration of his estate. A few days after the funeral of John T. Boyd, his three children decided to transfer the bank accounts and school warrants to their mother, Mrs. John T. Boyd, to enable her to pay certain debts of John T. Boyd and for her own use. A written contract was prepared to that effect, although it has been lost and its contents were not proven. Mrs. Youngdahl, appellant here, hesitated about signing the transfer of her interest in the bank accounts and school warrants to her

mother and did so only after her mother told her "It don't make any difference because you children will get what I have anyway when I die."

Mrs. John T. Boyd died in 1953, leaving a holographic will in the following words:

> "Poplarville, Miss.
> Aug. 26th, 1948
>
> "I want my *propety equly devided* with my 3 children and Gladys part *devided* with her son Richard. Rent the *Garridge* or leave it. Rent my house and each year Save one month or more to pay Taxes. Be sure *sure* and keep my Insurance Paid and it burns *devide* the money *equelly*
> give   1 war bond to John S. Boyd
> give   1 to Claud earl Simpson
> give   1 to Jinky Simpson
> give   1 to Gladys Belin
> give   Barbara Nell Belin
> give   1 to Clyde Boyd
> I want my Son to see' that this is *this is* carried *our* like I want. It I believe he will See that it is I dont want no one to be mad with me
>
> "Mrs. John T. Boyd"

This will was duly probated. Appellant filed a petition in the estate of Mrs. John T. Boyd in which she alleged she relied on her mother's statement that the children would get what Mrs. Boyd had when she died, and for that reason, and in consideration of her mother's said promise to leave appellant her share of the estate, appellant signed the transfer of the bank accounts and school warrants to Mrs. Boyd; that there was thus formed an oral contract to make appellant an heir or devisee which was binding on Mrs. John T. Boyd; that a proper construction of the will entitled appellant to a one-third part of the estate of Mrs. Boyd, who owned at the time of her death certain real property. The petition made an issue as to whether Richard Belin, appellee, was en-

titled to a one-sixth part of the estate of Mrs. John T. Boyd.

The chancellor heard the evidence and rendered a decree adjudging that under the will of Mrs. John T. Boyd it was the testator's intention to devise her property one-third to Clyde Boyd, one-third to Mrs. Simpson, one-sixth to appellant, and one-sixth to appellee. The chancellor found that there was no meeting of the minds between Mrs. John T. Boyd and appellant as to the alleged oral contract following Mr. John T. Boyd's death, and that the terms of the alleged oral contract was not sufficiently definite to be enforced. In other words, the chancellor found that there was no oral contract.

██ █ The chancellor correctly held that there was no oral contract whereby Mrs. Boyd was bound to provide by will or otherwise that appellant would receive one-third of the estate. There were no promissory words employed by Mrs. Boyd. She only made a statement as to the meaning of which one would be required to resort to speculation. She may have meant by the word "children" to include appellee, who had been raised by her. The actions and words of the parties were of such indefinite character that it cannot be said that a contract was formed. 12 Am. Jur., Contracts, Sec. 64. ██ █ Whether the contract was entered into by Mrs. Boyd and appellant was largely a question for the chancellor as the trier of the facts. 57 Am. Jur., Wills, Sec. 190. ██ █ The terms of a contract of this kind must be clear, definite, certain, and complete. 57 Am. Jur., Wills, Sec. 197. Cf. Russell v. Jones, 135 F. 929. We can not say the chancellor was manifestly wrong in finding that there was no contract. It is difficult to see how he could have found otherwise. For this Court to hold that under this proof the chancellor should have found the existence of a contract (assuming, but not deciding, that it was enforceable) would be to place the devolution of property upon a shaky foundation, encourage litigation in estates,

and put a premium on flimsy claims to estates of the dead.

■■ We now consider what Mrs. Boyd intended by her artless will written wholly in her own hand. There are numerous cases holding that the law favors that construction of a will which conforms most nearly to the general law of inheritance; ■■ that a will should be construed in the light of the circumstances surrounding the testator at the time the will was executed; ■■ that doubtful provisions should be construed favorably to the next of kin; ■■ that where an interest in an estate is given in one clause of a will in clear and decisive terms, it cannot be taken away or cut down by raising a doubt upon the meaning of a subsequent clause, nor by inference, nor by subsequent words that are not as clear and decisive as the words giving the interest; ■■ that the intention of the testator is the pole star for the construction of wills. These and other rules are general and helpful guides in determining the meaning of what a testator said in a will.

After giving full consideration to the applicable rules of construction to the entire will, the circumstances, the fact that it was a self-drawn will, the language employed, the possible conflicts in clauses, the fact that appellee had been raised by Mrs. Boyd and therefore probably considered somewhat in the category of a child, we conclude that Mrs. Boyd intended that appellee have a share of her estate; that she intended that he be placed in a different category from her other grandchildren, five in number, each of whom was given a war bond; that she intended that her estate be divided in three shares, as she had three children; that she intended that Gladys (appellant) divide her share with her son, Richard (appellee).

Circumstanced as she was, how did the testatrix intend Gladys divide with Richard? The dictionary gives this definition to the word "divide": "1. To part asunder (a

whole); to sever into two or more parts or pieces." To the formal speaker of the language, "divide" would no doubt mean to sever into two or more separate parts. But the language employed by the testator clearly indicated that she would use words in their colloquial meaning. ██ ██ The colloquial meaning of "divide" is: "To deal out something in portions or equal shares." Webster's New International Dictionary, Second Edition, Unabridged. ██ ██ Here was a mother speaking to her children through her will. She was not speaking in the precise language of the lawyer or the formal speaker. It is our opinion that Mrs. Boyd intended that Gladys and Richard share equally in one-third of her estate.

Nor do we think that the fact that Mrs. Boyd provided for *equal division* of the estate into three parts for her three children indicated that she meant something other than equal division when she said that Gladys should *divide* with Richard. The provision for disposition of the insurance money if the property burned does not, in our opinion, evidence an intention that Richard should not get half of Gladys' one-third of the estate.

We hold the learned chancellor properly construed the will.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.