FIRST NATIONAL BANK OF LAUREL, GUARDIAN, ETC. *v.* COMMERCIAL NATIONAL BANK & TRUST COMPANY, TRUSTEE, ETC.

No. 42794          November 18, 1963          157 So. 2d 502

*Beard & Pack,* Laurel, for appellant.

*Deavours & Hilbun,* Laurel, for appellee.

GILLESPIE, J.

Suit was filed in chancery court by the complainant-appellant, First National Bank of Laurel, guardian of the estate of Talmadge DeWitt Weems, N.C.M., against defendant-appellee, Commercial National Bank & Trust Company, trustee of the trust estate of Charles Samuel Weems, deceased, for the construction of the will of Charles Samuel Weems, deceased, and for recovery of oil royalties. The chancellor construed the will adversely to the complainant and dismissed the bill of complaint. Complainant appealed.

Charles Samuel Weems, deceased, was a brother of Talmadge Dewitt Weems. He was a layman and had never had any formal training in the law. On June 26, 1956, Charles Samuel Weems duly executed the following will, towit:

"I, Charles S. Weems, hereby will and deed to Commercial National Bank & Trust Company, Laurel, Mississippi, in trust my entire estate, real and personal, and all monies to be made a trust fund for my brother Talmage DeWitt Weems at present a patient in the East Mississippi Insane Hospital Meridian, Miss. I give to Talmage D. Weems the entire income from this trust fund after Talmage D. Weems death, I give the income from this trust fund to the East Mississippi Insane Asylum, Meridian, Miss. to buy things for needy patients that the State does not buy. I appoint the Commercial National Bank and Trust Company, Laurel, Miss., administrator and guardian for Talmage DeWitt Weems.

"I solemnly and affirmly swear this is my last will and testament.

(signed) Charles Samuel Weems

WITNESS:
(signed) Thad W. Lewis
(signed) Kelly K. Bass"

Many years prior to the death of Charles Samuel Weems, his brother, Talmadge DeWitt Weems, became mentally incompetent and had to be confined in a hospital for the care of mentally disordered persons. Charles Samuel Weems felt and evidenced a special sense of duty and responsibility for his brother and felt for him a particular affection. Charles Samuel Weems died December 3, 1956.

The will of Charles Samuel Weems was duly probated and appellee took over the trust estate thereby created. On September 23, 1958, appellee, as such testamentary trustee, executed an oil, gas and mineral lease on certain lands owned by Charles Samuel Weeks at the time of his death. Thereafter, on or about June 1, 1961, the lessee under said lease drilled on said property and produced an oil well, since which time the appellee as testamentary trustee has been collecting royalties on the production from said oil well.

It is the contention of appellant that the will of Charles Samuel Weems, deceased, should be construed so that the royalties from said oil well would be a part of the "entire income" from said trust estate. It is the contention of appellee that oil royalties are a part of the corpus of the estate and should not be construed as being a part of the "entire income" from the trust estate, and that the gift to Talmadge DeWitt Weems should be limited to the income produced from the investment of the funds received by the trustee as royalty.

■■ ■ The question for decision is whether Charles Samuel Weems intended that "the entire income" from

the trust estate given by the will to Talmadge DeWitt Weems included oil royalties. We hold that he did.

■■ ■ The oil and gas lease executed by appellee was what is designated as Producers 88-D9803, and provided for payment to the lessor of a royalty on oil of one-eighth of that produced and saved from the lands. The royalties payable under this lease is an interest in the land itself. It constitutes payment for oil in place withdrawn from the land, and the holder of a life tenant is entitled only to the interest from any investment of such funds where the lease is executed after the execution of the instrument creating the life estate. Martin v. Eslick, 229 Miss. 234, 90 So. 2d 635 (1956). Therefore, if the gift to Talmadge DeWitt Weems had been a life estate as such, he would not be entitled to the oil royalties, but only the interest from any investment of the funds received by appellee as royalties.

The gift in the will of Charles Samuel Weems was not of a life estate, but of "the entire income" from the trust estate. If the gift had been of a life estate, Talmadge DeWitt Weems would be entitled to the possession, use, and income from the real property. Since the gift was not of a life estate, but of "the entire income" from the trust estate created by the will, the Court should ascertain that the particular testator meant by what he said under the existing circumstances. It was stipulated that the testator was a laymen with no formal legal training. From the language of the will the Court takes notice that it was not written by a lawyer. There are certain rigid rules regarding the rights of a conventional life tenant, and these rules are applicable where the real problem is what rights a conventional life tenant has in property.

It is noted that the apparent inconsistencies in the decisions involving life estates result from the fact that many such cases involve the problem of will construction, and each case is decided on the basis of the particular

facts, relationships, and other factors considered by the courts in construing wills. 33 Am. Jur., Life Estates, Remainders, etc., Sec. 235, p. 722. So in the case at bar the real problem is not what rights a life tenant has, but what the testator meant.

Where a testator is not familiar with the technical meaning of words, the words used in the will are to be taken in their ordinary and common acceptances. Harvey v. Johnson, 111 Miss. 566, 71 So. 824; Dealy v. Keatts, 157 Miss. 412, 128 So. 268; Strickland v. Delta Investment Co., 163 Miss. 772, 137 So. 734. Effect should be given if possible to all words, clauses, and provisions of the instrument. Paine v. Sanders, 242 Miss. 392, 135 So. 2d 188 (1961). A will should be construed as to doubtful provisions in a manner favorable to the next of kin. Cross, et al v. O'Cavanaugh, 198 Miss. 137, 21 So. 2d 473; In Re Boyd's Estate, 228 Miss. 526, 87 So. 2d 902.

The testator was untrained in legal terminology. He loved his brother Talmadge and it was his desire to provide for him. He gave Talmadge the "entire income" from the trust so long as Talmadge lived, and then gave the "income" to the East Mississippi Insane Asylum for the benefit of the patients. We are of the opinion that "entire income" in the mouth of this particular testator under these particular circumstances meant all revenue flowing from the land whether rent or royalty, and without regard to whether it was corpus or income. The testator undoubtedly intended "entire income" to include more than "income." It was natural and reasonable for the testator to give to his unfortunate brother, for whom he felt a particular affection and a special sense of responsibility, more than he would give to unknown and unnamed patients at the institution where his brother was confined.

We do not impinge upon the rule laid down in Martin v. Eslick, supra, which does not apply here. In that

case the Court construed the will and found that the estate given by the will to Mrs. Eslick amounted to a life estate applicable to a conventional life estate. Since the mineral lease was executed after the death of the testator, the Court held that the portion of he oil paid as royalties represented principal or corpus and only the interest derived from any investment of such funds should be paid to the life tenant. In the Eslick case there was a trust estate, as in the case at bar, but there was no direct gift of ''the entire income'' as in the case at bar.

It is hardly conceivable that the testator had in mind the technical rules of law relating to life estates and when and under what circumstances a life tenant is entitled to receive oil royalties. In common parlance, ''income'' includes royalties. See cases cited, 20A Words and Phrases, p. 260, et seq. But the testator was not satisfied by merely giving his incompetent brother the ''income''. He gave him the ''entire income'' and thereby indicated an intention to make a gift of whatever revenue the trust estate produced. In our opinion he intended ''entire income'' to include any revenue received as royalties from the production of oil.

There was no dispute of fact and the error was one of law. Judgment is therefore entered here for appellant.

Reversed and judgment here for appellant.

*McGehee, C. J., and McElroy, Rodgers and Brady, JJ.,* concur.