2016 UT App 83

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ESTATE OF GORDON WARREN WOMACK

GORDON DOUGLAS WOMACK,
Appellant,
*v.*
STACY LEE WOMACK LEAVITT AND
NICHOLLE WOMACK HENDRICKSON,
Appellees.

Opinion
No. 20141129-CA
Filed April 28, 2016

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 893800021

Justin C. Rammell, Attorney for Appellant

Jon M. Hogelin and Benjamin T. Lakey, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

CHRISTIANSEN, Judge:

¶1 This case concerns a dispute over the proceeds from
subsurface mineral rights. Nearly twenty-five years after Gordon
Warren Womack passed away, and twenty-two years after the
court entered an amended order closing his estate, Womack's
son filed a petition to interpret his will. Some of Womack's

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

grandchildren opposed that petition. The district court determined that the petition sought to add language to Womack's will and was thus an attempt to replace or amend the estate-closing order. The court noted that it lacked the authority to vacate or amend the estate-closing order, and it ruled that the petition was time-barred. We affirm.

BACKGROUND

¶2 Gordon Warren Womack (Decedent) died on May 31, 1989, leaving three children: Gordon Douglas Womack (Douglas), Gloria Janet Womack (Gloria), and Jeff Warren Womack (Jeff). Decedent's will stated that he was the owner of an undeveloped 160-acre parcel of land located in Uintah County and provided for the distribution of that parcel and its subsurface rights:

> Said property should be divided among my aforesaid children, share and share alike . . . . Furthermore, the oil, gas and mineral rights under the said property together with any other oil, gas and mineral rights of which I am seized or possessed at the time of my death, are devised to each of my children, share and share alike, for life, remainder to the children of each of my children, each of my grandchildren to divide their parent's share by representation per stirpes and not per capita.

¶3 Gloria and Jeff were appointed as personal representatives of Decedent's estate in the formal probate proceedings. On February 20, 1990, they filed a petition for approval and final settlement of distribution. The court reviewed the petition and issued an estate-closing order on March 12, 1990. Douglas, Gloria, and Jeff each received an undivided one-third interest in the 160-acre parcel.

¶4     On May 21, 1991, Gloria and Jeff petitioned to reopen the estate. As pertinent here, the petition alleged "[t]hat a devise of the remainder interest in minerals belonging to the estate to the grandchildren of [Decedent], each grandchild to take a portion of his or her parent's share, subject to a life estate in the parent . . . was incorrectly omitted from [the March 1990 final settlement of distribution]." Gloria and Jeff therefore sought to have the estate-closing order "amended to conform to the Will." The district court agreed and issued an "Amended Estate Closing Order (Order of Complete Settlement)" on July 29, 1992, which adopted the petition's schedule of distribution. The schedule of distribution noted that a mineral appraisal of the 160-acre parcel had determined the value of the mineral rights' to be approximately $3,500. Douglas, Gloria, and Jeff each received a one-third life-estate interest in the mineral rights and a one-third interest in the surface rights of the 160-acre parcel.

¶5     In 2008, the parcel's mineral rights were leased to an oil and gas exploration company. And in 2014, after a question arose as to how to apportion the lease proceeds, Gloria and Jeff filed a petition seeking to reopen Decedent's estate, to reappoint them as personal representatives, and to construe Decedent's will. Gloria and Jeff first argued that the Rule in Shelley's Case applied and that the grandchildren's vested remainder interests should therefore be extinguished in favor of the children's life-estate interests. Gloria and Jeff also argued that "[t]he language in Decedent's Will . . . is ambiguous because it does not specify to whom are entitled the proceeds of mineral development."

¶6     In support of this second argument, Gloria and Jeff produced an affidavit from the attorney who had drafted Decedent's will stating that "the Decendent intended that the life tenants receive all income derived from oil, gas and minerals during their lives without liability to the remaindermen for waste." Accordingly, Gloria and Jeff sought "resolution of the ambiguity in accordance with the Decedent's intent . . . by

construing the Will . . . to include the following provision: 'a life estate in and to the right to receive all rents, royalties, bonuses and other income from production of said minerals during their lifetime, along with all executive rights to enter into leases on behalf of both the life estate and remainder, without liability for waste.'"

¶7 The 2014 petition was later amended "to reflect that it was filed by Douglas." Douglas then "withdrew his request that the Rule in Shelley's case should be applied to the proceedings, as the application thereof would be contrary to Decedent's intent."

¶8 The district court ruled that the 2014 petition sought to "construe the will differently than what was ordered in the 1992 estate closing order" and thus that the only remedy would be "vacation of the prior order and [issuance of] a different order." The court determined that the 2014 petition essentially sought to modify the 1992 amended estate-closing order, and therefore ruled that the petition was statutorily time-barred. Douglas timely appealed.

ISSUE AND STANDARDS OF REVIEW

¶9 Douglas contends that the district court erred by "creating and applying a statute of limitations derived from its misinterpretation of four (4) inapplicable sections of the Probate Code" because the petition "required only that the court construe/interpret the final estate order and . . . the will of the decedent." The application of a statute of limitations presents a question of law, and we review the district court's resolution of that question for correctness. *Ottens v. McNeil*, 2010 UT App 237, ¶ 20, 239 P.3d 308. To the extent that the district court's analysis relies on subsidiary factual determinations, we review those factual determinations for clear error. *Id.* We review a district court's interpretation of a statute for correctness. *State v. Graham*, 2011 UT App 332, ¶ 14, 263 P.3d 569.

ANALYSIS

¶10 Douglas's appeal centers on his assertion that the district court erred by applying the time limit rules for vacatur or modification of a probate order. The appellees, two of Douglas's children and thus grandchildren of Decedent, respond that application of those time limit rules was correct, and request an award of damages for what they characterize as a frivolous appeal.

## I. Time Limit Rules

¶11 The Utah Uniform Probate Code provides that "[s]ubject to appeal and subject to vacation as provided in this section and in Section 75-3-413, a formal testacy order under this part . . . is final as to all persons with respect to all issues concerning the decedent's estate that the court considered . . . ." Utah Code Ann. § 75-3-412(1) (LexisNexis Supp. 2015); *see generally id.* § 75-3-412(1)(a)–(c) (Michie 1993) (discussing certain exceptions not applicable here). The applicable time limit under section 412 is, at most, twelve months. *Id.* § 75-3-412(3) (Michie 1993). And where a personal representative for the estate has been appointed and a final distribution order has been entered, as here, any petition for vacation must be filed within six months after entry of the estate-closing order. *See id.* § 75-3-412(3)(a). "For good cause shown, an order in a formal testacy proceeding may be modified or vacated within the time allowed for appeal." *Id.* § 75-3-413.

¶12 Here, the petition averred that the 1992 amended estate-closing order (and by extension Decedent's will) was ambiguous as to how "the estate corpus and/or interest derived [therefrom] is divided among the heirs." The petition sought "[r]esolution of the ambiguity in accordance with the Decedent's intent," provided evidence of that intent in the form of an affidavit from Decedent's attorney, and asked the court to construe the will "to include" a provision proffered by Douglas.

¶13    On appeal, Douglas contends that the district court misinterpreted the 2014 petition as a petition for vacation or modification that would be subject to the six-month time limit. According to Douglas, the district court confused the underlying claim (that an ambiguity existed) with the requested relief (a judicial determination of Decedent's intent). Douglas asserts that the petition sought only "guidance and clarification of an estate closing order relating to matters of distribution of the estate" and that, as a result, the six-month time limit did not apply. Douglas further asserts that there is no "time limitation on construing a will, particularly because conflicts such as the ones herein arise fairly frequently and years into the future of a probated case."[2] In short, Douglas challenges the district court's determination of the nature of the petition.

¶14    The appellees respond that Douglas "is not merely seeking to construe the Will . . . , rather [he] is seeking to re-construe the very same provision of the Will . . . that the District Court construed previously." In their view, the 1992 amended estate-closing order would have to be vacated or modified to accommodate Douglas's requested relief. They assert that because the requested relief requires vacatur or modification of the 1992 amended estate-closing order, the 2014 petition is effectively a petition for vacation or modification and thus subject to the six-month time limit.

¶15    "Life estate and remainder interests in oil and gas have frequently led to litigation." *Hynson v. Jeffries*, 697 So. 2d 792, 794 (Miss. Ct. App. 1997). The common law rule is that holders of the remainder are entitled to receive the whole of the property,

---

2. Douglas elsewhere concedes that "'all actions, whether legal or equitable, are subject to a statute of limitations in Utah.'" (Quoting *Nolan v. Hoopiiaina* (*In re Malualani B. Hoopiiaina Trust*), 2006 UT 53, ¶ 26, 144 P.3d 1129); *see infra* ¶¶ 18–19.

including minerals, upon the termination of the life estate. *See id.* at 795–97; *see also Weekley v. Weekley*, 27 S.E.2d 591, 593 (W. Va. 1943) (explaining that "[o]il and gas in place is a part of the land" and that "[a]ny type of minerals in place is a part of the realty."). Conversely, the life-estate holder is "'entitled to enjoy the land in the same manner as it was enjoyed before the creation of the life estate.'" *See Hynson*, 697 So. 2d at 797 (quoting 2 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law*, § 513, at 654–55 (1989)). Thus, if at the time of the life-estate bequest there exists a mineral extraction operation paying royalties to the testator, the life-estate holder will also be entitled to enjoy those royalties. *See* 31 C.J.S. *Estates* § 49 (2015) (discussing the open mines doctrine). But absent an existing extraction operation, a life estate in minerals "does nothing more than reserve to [the holder] a life estate in the gas, oil and minerals *in place*." *See Weekley*, 27 S.E.2d at 593 (emphasis added).

¶16     Here, Decedent's will stated Decedent's intent to grant to his children life estates in the mineral rights to the 160-acre parcel and to give his grandchildren the remainder: "[T]he oil, gas and mineral rights under the said property . . . are devised to each of my children, share and share alike, for life, remainder to the children of each of my children . . . ." That provision was construed in the March 1990 estate-closing order to give Douglas, Gloria, and Jeff one-third interests in the parcel. In 1991, Gloria and Jeff petitioned to reopen the estate, seeking to amend the estate-closing order to better reflect the language of the will. Accordingly, the 1992 amended estate-closing order gave Douglas, Gloria, and Jeff one-third life-estate interests in the mineral rights and one-third interests in the surface rights. Then, twenty-two years later, Douglas filed the 2014 petition, asserting that this language was ambiguous and still did not reflect Decedent's intent. The district court ruled that the petition was time-barred because it sought to vacate or modify the 1992 amended estate-closing order.

¶17    We agree with the district court. The 1992 amended estate-closing order construed the will as intending to create life estates in mineral rights.[3] Life estates in mineral rights, by default, do not encompass a right to any proceeds from new mineral extraction. *See Hynson*, 697 So. 2d at 797 ("It is settled beyond controversy with reference to coal mines that a life tenant has no interest in or right to open and work new mines not in operation at the time he becomes vested with the estate." (citation and internal quotation marks omitted)).[4] Neither the will nor the 1992 amended estate-closing order construing the will purported to create or convey any rights to the proceeds from mineral extraction. The absence of an extraction-proceeds provision does not create an ambiguity as to whether Decedent intended to provide extraction proceeds to his children. Instead, the absence of an extraction-proceeds provision in the will

---

3. We note that most life-estate cases concern life estates in real property and that it is rare to convey life estates in mineral rights. *See, e.g.*, *Hynson v. Jeffries*, 697 So. 2d 792 (Miss. Ct. App. 1997); *see also Calvert Joint Venture # 140 v. Snider*, 816 A.2d 854, 881 n.31 (Md. 2003) ("In rare instances, generally involving family matters one would suppose, life estates in mineral rights might be created . . . ."). However, a life estate in mineral rights without the right to extract those minerals need not be an empty gesture; a life estate in minerals granted to a decedent's children with the remainder to his or her grandchildren could be a mechanism for a decedent to provide for grandchildren who may be born after the decedent's death.

4. At oral argument, Douglas's counsel noted that Utah has often departed from the common law regarding land and mineral rights. However, in the absence of legislation or case law memorializing that Utah has abandoned this particular facet of the common law, we will presume that it remains applicable in Utah.

indicates that no such provision was intended. The 1992 amended estate-closing order implicitly acknowledged this by omitting any discussion as to the distribution of extraction proceeds. Thus, any petition asserting that Decedent intended to grant extraction proceeds to the life-estate holders, rather than letting such proceeds default to the holders of the remainder, necessarily seeks vacatur or modification of the 1992 amended estate-closing order. It follows that the statutory time limits for petitions for vacation or modification apply to the 2014 petition.

¶18    Douglas also argues that the time limits in Utah Code section 412 only apply to formal testacy orders and that a "formal testacy proceeding" is limited to "litigation to determine whether a decedent left a valid will." *See* Utah Code Ann. § 75-3-401(1) (Michie 1993). Because the three-year statute of limitations set forth in section 75-3-107 is inapplicable to petitions to construe, *see id.* § 75-3-107(2) (LexisNexis Supp. 2015), Douglas asserts that his petition was subject only to the four-year "catch-all" statute of limitations, *see id.* § 78B-2-307 (LexisNexis 2012). The catch-all statute of limitations "begins to run upon the happening of the last event necessary to complete the cause of action." *Snow v. Rudd*, 2000 UT 20, ¶ 10, 998 P.2d 262 (citation and internal quotation marks omitted).

¶19    Douglas asserts, without citation to authority, that the last event here was the mineral-extraction company's notice that it could not determine to whom to pay the extraction proceeds. Given our conclusion that the 1992 amended estate-closing order implicitly granted extraction proceeds to Decedent's grandchildren (albeit by default), we have no reason to doubt that the catch-all statute of limitations, even if applicable, began to run upon the entry of that order. In any event, Douglas does not identify when he received notice from the mineral-extraction company and did not present evidence from which that date could be gleaned. Douglas notes only that he entered into mineral-extraction leases at some point in 2008, up to six years

before the petition to interpret was filed on February 4, 2014. It follows that the mineral-extraction company's notice could have been sent at any time between 2008 and February 4, 2014. Accordingly, even if the four-year catch-all statute of limitations did apply, and even if the statute's triggering event was the mineral-extraction company's notice to Douglas, we would be unable to conclude that the petition to interpret was timely filed.

## II. Damages for Frivolous Appeal

¶20    The appellees request an award of damages pursuant to rule 33 of the Utah Rules of Appellate Procedure. Rule 33 authorizes this court to "award just damages . . . to the prevailing party" if the court determines that an appeal "is either frivolous or for delay." Utah R. App. P. 33(a). The appellees assert that this appeal is frivolous. Rule 33 defines "a frivolous appeal" as one that is "not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b).

¶21    The appellees argue that Douglas "either knows or should know that to include [new] language to Decedent's Will, or Amended Estate Closing Order, . . . requires a new order, which vacates the previous order, amends, or modifies the previous order." They further argue that Douglas "either knows or should know that to amend, vacate, and/or modify an order is subject to limitations under the Utah Probate Code." The appellees do not analogize this case to any appeal in which the appellate court determined that appellant's claims were frivolous. Nor do they cite any authority for their apparent contention that an appellant who disputes the applicability of a statute to his case automatically "knows or should know" that the statute actually does apply.

¶22    As a result, we are unable to conclude that Douglas's appeal was frivolous, as that term is defined by rule 33. Therefore, we decline to award frivolous-appeal damages.

CONCLUSION

¶23   The district court correctly determined that the 2014 petition—despite being captioned as a petition to interpret—was subject to the six-month time limit normally applicable to petitions for vacation or modification under Utah Code section 75-3-412(3)(a). We therefore affirm the district court's decision to dismiss the case. Because the appellees have not shown that the appeal was frivolous, we decline to award damages under rule 33 of the Utah Rules of Appellate Procedure.

———————